2009 Ark. 165A

**Stark LIGON, Executive Director, Supreme Court Committee on Professional Conduct, Petitioner,**

v.

**Reginald Shelton McCULLOUGH, Arkansas Bar No. 85102, Respondent.**

No. 04–1395.

Supreme Court of Arkansas.

April 2, 2009.

Stark Ligon, Executive Director, and Nancie M. Givens, Office of Professional Conduct, Little Rock, for appellant.

No response.

**JIM HANNAH, Chief Justice.**

Stark Ligon, as Executive Director of the Arkansas Supreme Court Committee on Professional Conduct ("the Committee"), petitions this court to impose the sanction of disbarment in this original action against attorney Reginald Shelton McCullough. Acting under section 13(D) of the Arkansas Procedures Regulating Professional Conduct, Special Judge John Cole issued findings of fact and conclusions of law finding that seventy-five violations of the Arkansas Rules of Professional Conduct were deemed admitted by McCullough and that fifty-two of the violations constituted "serious violations" under section 17(B) of the Arkansas Procedures Regulating Professional Conduct.[1] In addition, Special Judge John Cole noted that McCullough had previously received fourteen public sanctions, including one caution, nine reprimands, and four suspen-

---

1. Judge Cole also found that given McCullough's prior disciplinary record, along with the "sheer volume" of the complaints, the incidences of lesser misconduct collectively constituted serious misconduct.

sions of various lengths from thirty days to an indefinite period based on the interim suspension. Special Judge John Cole recommended that McCullough be suspended from the practice of law for three years in addition to the pending interim suspension, pay restitution of $74,067, pay a fine of $10,000, and pay the full costs of the disbarment action. The Committee argues that disbarment is the appropriate sanction. We agree. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(5).

On December 30, 2004, the Committee filed a Petition for Disbarment. That petition was subsequently amended to add additional allegations. By a February 24, 2005 per curiam opinion, this court appointed the Honorable John Cole to sit as special judge and hear the disbarment proceeding. *See Ligon v. McCullough,* 361 Ark. 41, 204 S.W.3d 64 (2005). Hearings before the special judge commenced in 2005. McCullough failed to timely respond to discovery, and the accusations against him were deemed admitted. Special Judge Cole proceeded to hear evidence on the sanction. Both the Committee and McCullough put on evidence regarding aggravating and mitigating factors. McCullough was limited to medical witnesses, but he also proffered what he believed a number of witnesses from the legal profession would have stated, which was that he should be returned to practice as a valuable member of the profession. On February 13, 2007, Special Judge Cole issued his findings of fact, conclusions of law, and recommendation for sanctions pursuant to Procedures Regulating Professional Conduct section 13(C).

■ The authority to regulate the practice of law arises from Arkansas Constitution amendment 28 and amendment 80, section 4. Further, the power to regulate the practice of law is an inherent power of the courts. *See In re Anderson,* 312 Ark. 447, 851 S.W.2d 408 (1993); *Hurst v. Bar Rules Comm.,* 202 Ark. 1101, 155 S.W.2d 697 (1941); *see also Beene v. State,* 22 Ark. 149 (1860).

■ Section 1(C) of the Procedures Regulating Professional Conduct provides that attorney disciplinary proceedings are neither civil nor criminal in nature but are sui generis, meaning of their own kind. *See Ligon v. Dunklin,* 368 Ark. 443, 247 S.W.3d 498 (2007). The special judge's findings of fact are accepted by this court unless they are clearly erroneous. *Id.* This court imposes the appropriate sanction as warranted by the evidence. *Id.* There is no appeal from this court's decision on attorney discipline except as may be available under federal law. *Id.*

After the committee perfected its appeal, McCullough sought and received a thirty-day extension in which to file his responsive brief. McCullough subsequently sought an additional thirty-day extension to file his responsive brief. The court granted the additional thirty-day extension clearly declaring that it was McCullough's final extension. With the final extension, McCullough's brief was due September 24, 2008. On February 13, 2009, McCullough filed a motion to file a belated brief which was denied by the court.

■ Special Judge Cole's detailed Findings of Fact and Conclusions of Law consume sixty-four$_4$ pages. His findings and conclusions are not challenged by McCullough on appeal because McCullough failed to timely file a brief. However, Special Judge Cole's findings of fact were not clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Ligon v. Stewart,* 369 Ark.

380, 255 S.W.3d 435 (2007). Special Judge Cole's findings of fact and conclusions of law are not clearly erroneous.

## Conduct

Special Judge John Cole made the following findings of fact and conclusions of law:

1. Smitherman complaint:

   In violation of Arkansas Rules of Professional Conduct, 1.4(b), 3.4(c), and 8.4(d), McCullough in representing Mack Ray Dodson in a criminal matter failed to advise Dodson, the prosecutor, and the circuit court that he had been suspended from the practice of law, and further, McCullough failed to appear at three separate noticed hearings on March, 4, 2003, May 29, 2003, and July 22, 2003.

2. Elaine Turner Complaint:

   In violation of Arkansas Rules of Professional Conduct 1.2(a), 1.3, 1.4(a), and 1.6(d), McCullough accepted representation of Kirk Turner on post trial proceedings, accepted full payment for his work and then failed to take any action in the matter. He further failed to keep Turner advised of the status of the matter, failed to respond to client inquiries and correspondence, failed to respond to client telephone messages and failed to respond to correspondence of the Arkansas Supreme Court Committee on Professional Conduct attempting to assist Turner in obtaining a response from McCullough. Further still, McCullough failed to return the unused portion of his fee.

3. Audrey Reed Complaint:

   In violation of Arkansas Rules of Professional Conduct 1.1, 1.3, 3.4(c), and 8.4(d), McCullough failed to provide competent representation in failing to respond to a motion for summary judgment that resulted in his client's case being dismissed. He also failed to respond to a court order regarding the response to the motion for summary judgment.

4. Thomas Deen Complaint:

   In violation of Arkansas Rules of Professional Conduct 3.4(c) and 8.4(d), McCullough failed to appear at a noticed hearing on July 6, 2004, in a criminal matter. He also failed to appear at the hearing on his own motion that the trial judge recuse. He delayed the proceedings and prejudiced the administration of justice.

5. Other Matters:

   In violation of Arkansas Rule of Professional Conduct 3.4(c), McCullough failed to pay an obligation ordered by the Arkansas Supreme Court Committee on Professional Conduct on May 28, 2003 (R. 3.4(c)), to pay costs ordered by the Committee on July 15, 2003, and to pay fees and costs ordered by the Committee on Professional Conduct on March 1, 2004.

6. Mark Latta Matter:

   In violation of Arkansas Rules of Professional Conduct 1.1, 3.4(c), and 8.4(d), McCullough failed to file a compliant brief before this court in a criminal appeal. He also again failed to file a compliant brief after subsequently being ordered to do so.

7. Regina Hayes Complaint:

   In violation of Arkansas Rules of Professional Conduct 1.4(a) and 8.4(d), McCullough failed to respond to multiple requests for information by client Hayes, failed to keep Hayes advised of the status of her case, failed to respond to client correspondence, and failed to pursue or advise Hayes that he would not pursue any action in her case.

8. Missy Engel Complaint:

In violation of Arkansas Rules of Professional Conduct 1.2(a), 1.3, 1.4(a), 8.4(c), and 8.4(d), McCullough failed to prosecute Engel's matter pursuant to court rules which resulted in dismissal of Engel's action. Further, McCullough failed to advise Engel of the reason for the dismissal and committed fraud and deceit in allowing her to believe that he had voluntarily dismissed the complaint. Further still, McCullough provided Engel a copy of a motion to voluntarily dismiss that was not filed until nineteen days after the court has already dismissed the action.

9. Flora Cosby Complaint:

In violation of Arkansas Rules of Professional Conduct 1.1, 1.3, and 8.4(d), McCullough failed to respond to a motion for summary judgment and allowed entry of the dismissal of his client's action.

10. Linda Faye Battle Complaint:

McCullough agreed to analyze whether Battle's brother might be eligible for a reduced sentence through post conviction proceedings. In violation of Arkansas Rules of Professional Conduct 1.16(a), 1.2(a), 1.3, 1.4(a), despite being retained to do so, he did not pursue the matter, failed to communicate with his client, failed to keep his client advised of the status, and failed to respond to client correspondence and phone calls. Further, he failed to account for or return the unused portion of his fee.

11. Calvin Lamont Walker Appeal Matter:

In violation of Arkansas Rules of Professional Conduct 1.1, 3.4(c), and 8.4(d), McCullough failed to file a record and perfect the appeal. He also failed to obtain a partial record to pursue his application to declare Walker indigent. Further, he failed to respond to the clerk's attempts to resolve the problem with the record and failed to continue his representation of his client until relieved.

12. Willie Watkin Matter:

In violation of Arkansas Rules of Professional Conduct 1.15(a), 1.15(b), and 8.4(c), McCullough failed to maintain a $100,000 settlement in his IOLTA account until passed to appropriate parties. Further, he failed to notify health care providers of the settlement, failed to deliver settlement funds due them, and in the case of one provider falsely advised that litigation was still pending. Further still, McCullough deposited the settlement check listing Medicare as a payee without the endorsement of Medicare.

Special Judge Cole found that since being admitted to practice law in 1985, McCullough has been suspended from practice on four occasions. He has received fourteen public sanctions. It is also clear that throughout all the above-noted matters, McCullough has shown a reluctance to assume responsibility for his own errors. He repeatedly blamed his failure to timely file documents on clerks and his failure to respond to pleadings and discovery on an assertion that he never received mail. In these very proceedings, McCullough blamed his failure to respond on having not received documents that were sent to him through the United States Postal Service. No evidence was offered to show that the postal service failed to properly deliver mail to McCullough. Further, Special Judge Cole found, and we agree, that McCullough has never offered to reimburse clients for the funds that were intermingled with his own or the fees that he should have refunded. In his testimony in this matter, McCullough stated,

I have had financial problems. I just don't know what happened to every penny, dime and dollar, even though I wish I could tell you. I don't know whether I made bookkeeping mistakes, or if somebody working for me made mistakes, but I realize it's my responsibility, no matter who made the errors.

Stating that responsibility is accepted does not reimburse clients. Even if we were to accept the recommended sanction and impose the proposed fines, McCullough's clients would not be made whole. Special Judge Cole found that there was misuse of client funds and that there is no "stated intention or plan described to make whole the clients whose funds were diverted." Special Judge Cole found the conduct "egregious" under section 19 of the Arkansas Procedures Regulating Professional Conduct. We agree.

### Attorney Discipline

■ The purpose of disciplinary actions is to protect the public and the administration of justice from lawyers who have not discharged their professional duties to clients, the public, the legal system, and the legal profession. *Stewart*, 369 Ark. at 384, 255 S.W.3d at 439. The practice of law is a privilege, not a right. *Stilley v. Ligon*, 370 Ark. 294, 304, 259 S.W.3d 395, 402 (2007). We are certainly mindful that an attorney earns his or her livelihood by practicing law, and that to lose the license to practice means not only the loss of earning a livelihood, but also the loss of one's profession and many years of education.

■ However, those who have taken the oath as an officer of the court owe a high level of fidelity to their clients. *Norfleet v. Stewart*, 180 Ark. 161, 169, 20 S.W.2d 868, 871 (1929); *see also Baker v. Humphrey*, 101 U.S. 494, 502, 25 L.Ed. 1065 (1879). In issues of misuse or misap-

propriation of a client's money, the slightest divergence from rectitude breaches the oath, the trust between attorney and client, and the confidence that the public must be able to place in the profession. *Id. See, e.g., Neal v. Hollingsworth*, 338 Ark. 251, 992 S.W.2d 771 (1999). Under these circumstances, the public and the profession are best served by firmly applying the rules. *Id.*

### Serious Misconduct

■ Special Judge Cole found that at least seventy-five violations of the Arkansas Rules of Professional Conduct were deemed admitted. He determined that fifty-two of the violations constituted "serious violations" under section 17(B) and (C) of the Arkansas Procedures Regulating Professional Conduct. Special Judge Cole noted that McCullough had previously received fourteen public sanctions and four suspensions. Section 17(B) and (C) of the Procedures Regulating Professional Conduct defines misconduct:

B. Serious Misconduct. Serious misconduct is conduct in violation of the Model Rules that would warrant a sanction terminating or restricting the lawyer's license to practice law. Conduct will be considered serious misconduct if any of the following considerations apply:

(1) The misconduct involves the misappropriation of funds;

(2) The misconduct results in or is likely to result in substantial prejudice to a client or other person;

(3) The misconduct involves dishonesty, deceit, fraud, or misrepresentation by the lawyer;

(4) The misconduct is part of a pattern of similar misconduct;

(5) The lawyer's prior record of public sanctions demonstrates a substantial

disregard of the lawyer's professional duties and responsibilities; or

(6) The misconduct constitutes a "Serious Crime" as defined in these Procedures.

C. Lesser Misconduct. Lesser misconduct is conduct in violation of the Model Rules that would not warrant a sanction terminating or restricting the lawyer's license to practice law.

### The Appropriate Sanction

McCullough's conduct rises to serious misconduct on multiple occasions. He argued in the disbarment proceedings that disorders he suffers from, including major depression, attention deficit disorder, sleep disorder, compulsive behavior, and anxiety disorder caused him to struggle in his practice and commit the errors. We note first that McCullough has a consistent history of missing deadlines that dates back to the early nineties. He also has a consistent history of blaming his shortcomings on others that dates back nearly as far. Further, we cannot help but note that during the period that he alleges he suffered most, he was able to meet with clients and accept fees, which too often were taken without then providing the agreed work. We do not see why he would be unable to meet basic trial and appellate deadlines that were no more complex than making appointments and appearing at meetings with clients. There is no evidence that McCullough's mental problems were causing him to act in a deceptive or dishonest manner. As Special Judge Cole found, McCullough was "not without the ability to recognize his shortcomings and advise his clients." While we do not discount the suffering of physical and mental disorders, we must closely examine the facts where the disorder appears to have been used as an excuse and was not a cause. Our obligation to the public and to the administration of justice in protecting against attorneys who have failed to discharge their professional duties to clients, the public, the legal system, and the legal profession requires no less. *See Ligon v. Price*, 360 Ark. 98, 200 S.W.3d 417 (2004). In *In re Butcher*, 322 Ark. 24, 907 S.W.2d 715 (1995), on an issue of readmission, we noted that Butcher had shown that through treatment he was competent to practice law despite his mental disorder; however, we also held that there was no direct proof that the mental disorder caused him to act in a deceptive or dishonest manner. In the present case, we commend McCullough for seeking treatment; however, there was no direct proof that his depression and other disorders prevented him from acting consistently with his duties as an attorney and an officer of the court. None of the treating physicians opined that McCullough's health problems deprived him of the ability to comply with the requirements of his legal practice. To the contrary, there is evidence that he was capable and failed to act. After he asserted that he had succeeded with treatment, he failed to timely file his brief in this very matter. This is a pattern with Mr. McCullough that exists today and predates the ailments he alleges caused his failures. We are not unmindful that McCullough made no offer and asserted no commitment to reimburse clients prior to the special judge's recommended order so requiring.

From the evidence presented we are left to conclude that one of two conditions is present with McCullough, both of which weigh heavily in our analysis on the proper resolution of this matter. Either McCullough is again competent to practice law as a consequence of his treatment, in which case he continues to fail to attend to his duties as an attorney by not answering requests for admissions and failing to file timely briefs, or he remains incompetent

due to physical and mental disorders. Having a mental disorder that impaired his ability to practice law obviously would not entitle McCullough to continue practicing law. In *Ligon v. Price*, 360 Ark. 98, 200 S.W.3d 417 (2004), the attorney claimed that he would not have violated so many model rules but for a severe emotional impairment. We stated that the purpose of disciplinary proceedings is to protect the public and the need for protection is the same whether or not the attorney is mentally impaired. *Price*, 360 Ark. at 117, 200 S.W.3d at 429 (citing *Slaten v. State Bar of California*, 46 Cal.3d 48, 249 Cal.Rptr. 289, 757 P.2d 1 (1988)); *see also Ligon v. Stewart*, 369 Ark. 380, 255 S.W.3d 435 (2007).

We now turn to the special judge's recommendation that McCullough be suspended from the practice of law for three years, that he pay restitution of $74,067, pay a fine of $10,000, and that he pay the full costs of the disbarment action. We must respectfully disagree with the special judge's recommendation. McCullough has both misappropriated client funds for his own use and taken funds from clients as fees for which work was never done. This constitutes serious misconduct under section 17(B)(1), (3) and (4) as misappropriation, dishonesty or fraud, and a pattern of similar misconduct. Further, McCullough's prior record of public sanctions demonstrates a substantial disregard of the lawyer's professional duties and responsibilities. Section 17(B)(5). Misuse or misappropriation of money from a client constitutes serious misconduct that requires strict application of the rules. *See Norfleet, supra.*

McCullough not only failed to provide services promised, he misled clients about the status of their cases and failed to apprise them when the case was dismissed through his own misconduct. This conduct also constitutes breaches of trust that seriously undermine the confidence of the public in the legal profession. *See Wilson v. Neal*, 332 Ark. 148, 964 S.W.2d 199 (1998). For our legal system to function properly, a client must be able to trust his or her attorney, and it is the responsibility of this court to see that the public is justified in believing that attorneys are worthy of that trust. *See In re Butcher, supra*. McCullough's conduct is gravely serious and warrants disbarment.

Order of disbarment issued.