EX PARTE ANÍBAL E. BONETA COLÓN ET AL., Petitioners.

Submitted November 5, 1928.—Decided February 14, 1929.

Mr. Justice Texidor delivered the opinion of the court.

In these proceedings the facts are as follows:

Aníbal E. Boneta Colón appeared before this court in 1921 and alleging that he was a graduate of the National University of Washington, D. C., which he had attended for three years, asked for an examination. He did not say in what he was a graduate or what examination he desired. He presented his documents, diploma, etc., and was admitted to examination in law on March 30, 1921, failing to pass. Again, at his request, he was examined on November 23rd of the same year and failed. For the third time he came up for examination on March 24, 1922, and failed. On November 25, 1925, he took another examination and failed. On March 26, 1926, he failed to pass in another examination. And now, under the provisions of Act No. 78 of 1928, he applies for admission to the bar without examination, on the grounds that he is a graduate of an accredited university of the United States, a person of good moral conduct, as shown by affidavits, and has served satisfactorily as a municipal judge in Porto Rico for more than four years. Among the documents presented is a joint affidavit of attorneys Lorenzo Coballes and Luis Mercader who say that they have known the petitioner for eight years as a person of excellent conduct and reputation and worthy of being admitted to the practice of law, and a certificate signed by the Attorney General of Porto Rico to the effect that Aníbal E. Boneta served satisfactorily as municipal judge of Cayey from January 11, 1924, until May 29, 1928, the date of the certificate.

In 1921 Néstor A. Boneta Colón applied to this court for examination to practice law. He presented a diploma from the National University of Washington, certificate of attendance, conduct, etc., and was admitted to examination. He was examined on March 29, 1921, and failed. He again requested and was given an examination on November 23, 1921, and failed. On applying again he was given an examination on March 24, 1922, and failed. And now, in accordance with Act No. 78 of 1928, he asks for admission to the practice of law without examination. He exhibits an affidavit signed by attorneys Herminio Miranda and Luis Mercader vouching for the good moral conduct and character of the petitioner and stating that in their opinion he is worthy of admission to the practice of law, and an affidavit of attorney Lorenzo Coballes Gandía to the effect that the petitioner has been working regularly since January, 1921, in the law and notarial office of the affiant, and has rendered excellent legal service to the affiant in his professional work.

As questions of law we find the following:

(a) The admission of attorneys to the practice of the profession in Porto Rico is governed, in the first place, by Act No. 8 of 1906, to which several amendments have been made. See Compilation of 1911, sections 151 to 180. It was the law that persons of good moral conduct, over 21 years of age, citizens of the United States or of Porto Rico, who held diplomas as graduates in law issued by any accredited university, provided said diplomas had not been acquired by correspondence, may be admitted on presentation of their diplomas together with certificates of personal attendance for not less than two years, after passing an examination on the subjects prescribed by statute before the Supreme Court of Porto Rico or any other court designated by it and after securing a favorable report from the committee on the reputation of lawyers. By section 6 of that Act the Supreme Court of Porto Rico is authorized to prescribe such rules and

regulations as may be necessary for its proper enforcement. Previous acts were expressly repealed.

The Act of March 11, 1909, created the committee on character whose members are appointed by the Supreme Court of Porto Rico and to which shall be referred the petitions for admission to the practice of law pending before the Supreme Court, which can not issue any license to practice the profession without first receiving a favorable report from the committee. That same Act establishes and defines the powers of the Supreme Court of Porto Rico to disbar and suspend attorneys from the practice of the profession in certain cases by following certain procedure.

Act No. 38 of April 13, 1916, affirmed the requirements of presentation of diplomas, examination before the Supreme Court, report of the committee on character and specification of the subjects for examination. But its section 4 provided that any person of good moral character who has been admitted to practice law in the Supreme Court of any State or Territory of the United States, or of the District of Columbia, or in the United States District Court for the District of Porto Rico, and has been actively engaged in the practice of law for three years or more, including at least one year's practice in the District Court of the United States for Porto Rico, may be admitted to practice law without examination, on application and proof of having filled those requirements. It is provided in section 5 of that Act that "Whenever the Supreme Court in any of the cases specified hereinbefore decides to admit a person to practice his profession as attorney at law, it shall require him to take an oath before it . . . ." Section 6 thereof affirms the authority of this court to prescribe rules and regulations for the enforcement of the Act. And section 10 thereof provides that this Act shall not be construed to prohibit the Supreme Court, or any of the judges thereof, from extending to any visiting lawyer of good standing before the Supreme Court of any State or Territory of the United States, the courtesy

of appearing as counsel in special cases before the courts of the island.

Act No. 45 of April 12, 1917, was a special act providing that a person who had undergone examination and obtained an average of 60 per cent in the last course taken by him and had had constant practice for ten years in offices where legal knowledge was required, may be admitted to new examinations without the presentation of a diploma.

Section 4 of Act No. 38 of April 13, 1916, was amended by Act No. 17 of 1925, so as to admit to the practice of law without examination any person who, having been graduated as a lawyer at least ten years prior to the approval of the Act, proves to the satisfaction of the Supreme Court that he has practiced for at least five years in the office of any lawyer authorized by the Supreme Court of Porto Rico to practice his profession, or who has satisfactorily served as municipal judge for a term of four years, upon showing that he possesses the stated requirements. The Act contains other provisions and rules applicable to persons admitted to practice before the District Court of the United States for Porto Rico.

In the same year of 1925 Act No. 91 of August 22 amended section 3 of the Act of April 13, 1916, in regard to one who held a diploma from the University of Porto Rico. That Act has no application to the case under consideration.

Nor is the amendment of 1927, Act No. 12, referring to exemption from examination of graduates of the University of Porto Rico under certain conditions, applicable to this case.

Section 2 of the Act of April 13, 1916, was amended by Act No. 29 of 1927 so as to provide that a person not previously admitted to practice law, who had obtained a diploma from any national or foreign university, should be admitted upon proving to the satisfaction of the examining court that he was a *bona fide* citizen of the United States, presenting a diploma not obtained by correspondence, passing an examina-

tion before the Supreme Court of Porto Rico or any board of examiners appointed by that court and exhibiting a favorable report from the committee on the reputation of lawyers.

In 1928 was enacted Act No. 78 which is relied on by the petitioners herein. Under this Act, which amends section 4 of Act No. 38 of 1916, any graduate in law from an accredited university of Europe or the United States who proves to the satisfaction of the Supreme Court that he has practiced for at least five years in the office of a lawyer licensed by the Supreme Court to practice in Porto Rico, or who has served satisfactorily as municipal judge for four years and is a graduate of such universities, may be admitted to practice law without examination. The text of the Act is as follows:

"Section 4.—Any person of good moral conduct who has been admitted to practice law in the Supreme Court of any State or Territory of the United States or of the District of Columbia, or in the United States District Court for the District of Porto Rico, and any person who, being a citizen of the United States and a graduate in law from any accredited university of Europe or the United States proves to the satisfaction of the Supreme Court of Porto Rico that he has practiced for at least five (5) years in the office of any lawyer authorized by the Supreme Court of Porto Rico to practice his profession, or who has satisfactorily served as municipal judge for a term of four (4) years, in both cases prior to the approval of this Act, may be admitted to practice law in the courts of Porto Rico, without an examination, upon making a written application to the Supreme Court and upon presenting to said court a favorable report from the Reputation Commission, and upon producing satisfactory evidence of his having been admitted to practice law in any of the courts mentioned in this section, and that he has been duly practicing in any of said courts as provided for herein, for the period of time prescribed; *Provided, however,* That the provisions of this section requiring that applicants for admission to practice law in the courts of the island shall have been actively engaged in the practice of law for two years or more, shall not be applicable to those persons who have been admitted to practice and shall have practiced in the District Court of the United States for Porto Rico, for two or more years, prior to May 20, 1925; *Provided, further,* That such persons shall be

admitted to practice law in the insular courts of Porto Rico, without further examination, upon making a written application to the Supreme Court and upon presenting to said court a favorable report from the Reputation Commission and upon producing satisfactory evidence of having been admitted to practice law in any of the courts mentioned in this section, for two or more years prior to the approval of this Act, and evidence of having duly practiced before any of the said courts; *And provided, finally,* That any person who, on or before May 20, 1925, shall not have been admitted to practice the profession of law in the District Court of the United States for Porto Rico in order to be admitted to practice in the insular courts, shall, in addition to the requirements heretofore prescribed, hold a lawyer's diploma issued by any accredited university to the satisfaction of the Supreme Court of Porto Rico.''

The general theory upheld by the best practice and the soundest logic is that as lawyers are court officers, the power to admit aspirants to the practice of the profession is judicial and not legislative and that only the courts are vested therewith. The doctrine that the authority to admit attorneys to practice is of a judicial and not of a legislative nature seems to be uniform.

In *Ex parte Garland,* 4 Wall. 333, the Supreme Court of the United States affirmed this doctrine, and in *Ex parte Secombe,* 19 How. 9, that court said:

''By the rules and practice of common-law courts, it rests exclusively with the court to determine who is qualified to become or continue one of its officers, as an attorney and counsellor of the court; the power being regulated, however, by a sound and just judicial discretion—guarding the rights and independence of the bar as well as the dignity and authority of the court.''

In that case the following circumstances are to be noticed:

(a) That it was a decision of a district court of the United States exercising the powers of a circuit court.

(b) That the decision says that ''in a court of that character, the relations between the court and the attorneys and counsellors who practice in it, and their respective rights and duties, are regulated by the common law.''

(c) That the case was not one of admission to the practice of the profession, but of the removal of an attorney.

It is to be observed also that the State (Minnesota) Legislature had, by statute, prescribed the conditions upon which a person should be entitled to admission as an attorney and enumerated the offenses for which he might be removed and prescribed the mode of proceeding against him. The claimant contended that it did not appear that any fault or offense had been charged against him. The Supreme Court held that the statute only affirmed the general rules of the common law on which the courts had always acted.

The case of *Ex parte Wall*, 107 U.S.R. 265, refers also to the disbarment of an attorney without any conviction in a separate criminal prosecution. It was held that the proceeding to strike an attorney from the roll is one within the proper jurisdiction of the court of which he is an attorney, and does not violate the constitutional provision which requires an indictment and trial by jury in criminal cases; that it is not a criminal proceeding intended for punishment, but to protect the court from the official administration of persons unfit to practice as attorneys therein.

In *People* v. *Bissel*, 68 Am. Dec. 591, there was a petition for a writ of *mandamus* against the governor of a state. The court studied carefully the question of the division or independence of powers within the state and held that each department of the government had its own constitutional sphere and acted in it with independence; but it defined the right of the courts to determine the meaning of the statutes enacted by the legislature and whether the legislature had the power to pass such statutes.

In the case of *In re Application for License to Practice Law*, decided by the Supreme Court of Appeals of West Virginia on March 15, 1910, 67 S. E. 597, we find that a statute of West Virginia prescribed, among other things, the following in regard to licenses to practice law:

"And the Supreme Court of Appeals may upon the production

of a duly certified copy of the order of the county court, hereinbefore mentioned, and upon being satisfied that the applicant has shown upon an examination, conducted in accordance with such rules and regulations, that he is qualified to practice law in the courts of this State, and upon being further satisfied that such rules and regulations have been complied with in all respects, grant such applicant a license to practice law in the courts of this State, and such license shall show upon its face that all the provisions of this section and of the said rules have been complied with: provided, that any person who shall produce a duly certified copy of such order of any county court of this State, and also a diploma of graduation from the law school of the West Virginia University, shall upon presentation thereof in any of the courts of this State be entitled to practice in any and all courts of this State, and the order so admitting him shall state the facts pertaining to the same."

The petitioner in that case presented a certificate from the Law Faculty of the University and a certified copy of the order of the court showing that he had appeared and proved his age, good reputation and residence, and asked for a license to practice law.

The Bar Association of the City of Charleston opposed the admission of the petitioner, stating its reasons therefor and presenting evidence on the facts alleged. The petitioner appeared and moved to quash on certain grounds. We will quote from the opinion of the court that part thereof which is applicable to this case:

"These propositions involve to some extent the question of power in the legislature to prescribe qualifications and rules and regulations for obtaining license and admissions to practice law, as well as the proper construction of the statute. The authority of the legislature is denied by some courts, on the ground that courts have the sole right to prescribe for themselves the qualifications of their ministers of justice, and rules and regulations for their admission, without interference by a co-ordinate branch of the government. In re Day, 181 Ill. 90, 54 N. E. 646, 50 L. R. A. 519; In re Mosness, 39 Wis. 509, 28 Am. Rep. 55; In re Splane, 123 Pa. 527, 16 Atl. 481; In re Branch, 70 N. J. Law, 537, 57 Atl. 431. The Illinois court in In re Day denied the authority of the legislature to require that possession of a certificate of graduation from a law school of a certain specified stand-

ard should entitle the holder to be admitted to practice law. Such right on the other hand seems to have been upheld in New York. In re Cooper, 22 N. Y. 67. See, also, In re Applicants for License to Practice Law, 143 N. C. 1, 55 S. E. 635, 10 L. R. A. (N. S.) and note 288.''

The following is from the same opinion:

''But notwithstanding the jurisdiction of the courts over the subject it has been generally conceded that the legislature may in the exercise of its police power, prescribe reasonable rules and regulations for admission to the bar, which will be followed by the courts. But the legislature may not impose unreasonable rules or deprive the courts of their inherent power to prescribe other rules and conditions of admission to practice. In re Day, supra, 181 Ill. 95, 54 N. E. 646, 50 L. R. A. 519; in re Leach, 134 Ind. 665, 671, 672, 34 N. E. 641, 21 L. R. A. 701; 3 Am. & Eng. Ency. Law, 287; 4 Cyc. 900; Ex parte Secombe, supra; In re Goodell, 39 Wis. 232, 20 Am. Rep. 42.''

In its opinion the court quoted the following interesting paragraph from the *Goodell Case, supra:*

''The legislature has, indeed, from time to time assumed power to prescribe rules for the admission of attorneys to practice. When these have seemed reasonable and just, it has generally, we think, been the pleasure of the courts, to act upon such statutes, in deference to the wishes of a co-ordinate branch of the government, without considering the question of power.''

Speaking of the Act of 1849, the same court said in the *Goodell Case:*

''If, unfortunately, such an attack upon the dignity of the courts should again be made, it will be time for them to inquire whether the rule of admission be within the legislative or the judicial power. In the meantime, it is a pleasure to defer to all reasonable statutes on the subject.''

In the case of *In re Application for License to Practice Law* of West Virginia it was said:

''It is said in 3 Am. & Eng. Ency. L., at page 287, on the authority of some of the cases cited that: 'It lies with the power of the legislature to prescribe the qualifications required for admission to

the bar, and the courts will have no authority to admit any person not possessing the required qualifications.' 'But the admission of an applicant to practice is a judicial act, and the attorney, when admitted, is an officer and member of the court; the legislature has no power, therefore, to provide that any person possessing certain qualifications must be admitted; it cannot assume judicial powers; and in every case the courts are vested with discretion as to whether any applicant is entitled to admission.' "

In the case of *In re Day* of Illinois, 54 N. E. Rep. 646, there was a discussion of whether the authority or power to grant admission is legislative or judicial. As a background a review was made by the court of the history of admission to the bar in England and in speaking of the United States it said:

"In this country the courts of the United States have always controlled the admission of attorneys. The first congress recognized their power in that respect and they have always retained it."

In the majority opinion the case of *Ex parte Garland,* 4 Wall. 333, was cited and the doctrine was reaffirmed that admission to the bar is not a mere ministerial power, but a judicial power. Reference was made to the case of *In re Cooper,* 22 N. Y. 67, wherein it was held that the statute enacted by the legislature under which admission to the bar was granted upon presentation of a diploma from Columbia College, was valid. In the case of *In re Cooper,* 22 N. Y. 183, 8 Smith, Court of Appeals Cases, it was said:

"The Supreme Court, in acting upon an application for admission to practice as an attorney and counselor, acts judicially, and not in the exercise of a purely administrative function."

In that particular case was considered the act which made the possession of a diploma issued by the Columbia University the only previous requisite for admission and substituted for the examination before the court that passed in the said university. But as may be seen, not even in that case did the judicial power surrender its privilege in the matter of admission, at least from the viewpoint of the legal

doctrine, which was upheld in the paragraph from the syllabus transcribed. It is true that it was held in the opinion that the petitioner had a right under the law to be admitted. But it is likewise true that that right is based primarily on the fact that the Constitution of the State "confers the absolute right to admission on any person who possesses the necessary requisites."

It is true that *Ex parte Garland*, 71 U.S.R. 333, involved the power of admission with relation to federal courts, but the doctrine established is of very great importance. It was held therein that attorneys are not officers of the United States, but officers of the courts and admitted by them on proof of sufficient legal knowledge and good private conduct, and that their admission and exclusion are not the exercise of ministerial power, but of judicial power.

From the foregoing study we are convinced that the power to admit aspirants to the practice of law partakes more of a judicial power than of any other power. Undoubtedly, if attorneys are officers of the courts and in and before them their mission is to assist in the administration of justice; if they cooperate with the courts in the exercise of a power so sacred, and if they find themselves, by virtue of statutes founded on a sound, just, logical and constant practice, subject to the inspection of those same courts, the courts must have, before any other power, that of admitting or not those who aspire to become their collaborators and co-operators in the highest mission with which one man or a body of men can be charged.

The power of the legislature to prescribe rules and require qualifications of applicants for admission to the bar is undeniable. But we believe that such power can not be exercised so as to demand compulsory admission by the courts; and it is our opinion that it was never intended by our legislature or by any other to nullify the inherent and necessary power of the courts as regards the admission of their officers.

We believe that the words "may be admitted" used in

the statute save the power of the Supreme Court to admit or reject the applicant. It does not employ the imperative "shall" and this convinces us that the legislature has respected the judicial power of this court in the matter of admission.

When a statute is susceptible of two constructions, one in accordance with its constitutionality and the other not, it is the practice of courts to follow the former. Unless the right to be exercised is clearly contrary to the Constitution, it is the duty of courts to respect the will of the legislature. It was so held by this court in *Ponce Lighter Co.* v. *Municipality of Ponce et al.*, 19 P.R.R. 725, and affirmed in *People* v. *Neagle*, 21 P.R.R. 339, and *People* v. *Subirá*, 27 P.R.R. 567. And in that sense we hold that the purpose of the legislature was not to deprive the Supreme Court of its power and authority to admit or reject aspirants to the practice of law. The phrase used in the statute, "may be admitted," authorizing or permitting, but not commanding, supports us in this conclusion.

The petitioners herein failed to demonstrate their preparedness by passing the examinations. It is the duty of the court to require proof that that condition has changed.

It would be very difficult to define what is meant by practice in the law office of an authorized attorney, unless the performance of duties of an auxiliary nature is called "practice." The practice of law has a great variety of manifestations: That of the jurisconsult who studies and solves questions of law, submits solutions and advises as to the line of action; that of the attorney who appears in court, takes part in the trials and argues in actions or causes, and that of one concerned with the drafting of briefs and pleadings or with the preparation of the cases to be tried. In any case it is incumbent upon this court to determine whether the practice alleged by a petitioner would be sufficient to convince us of the proficiency of the petitioner.

The petitions of Aníbal E. Boneta and Néstor A. Boneta

for admission to practice the profession of law without examinations are denied.